UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID SAXTON,<br><br>    Petitioner,<br><br>    v.<br><br>DANIEL PARAMO,<br><br>    Respondent. | NO. CV 14-5673-VBF (AGR)<br><br>ORDER ACCEPTING FINDINGS AND RECOMMENDATION OF MAGISTRATE JUDGE |

Pursuant to 28 U.S.C. § 636, the Court has reviewed the Petition, the other records on file herein, the Report and Recommendation of the United States Magistrate Judge ("Report") and the Objections. Further, the Court has engaged in a *de novo* review of those portions of the Report and Recommendation to which objections have been made. The Court accepts the findings and recommendation of the Magistrate Judge.

    A.   <u>Petitioner's Motion for Leave to Amend Grounds One and Two</u>

After the Report was issued, Petitioner filed a motion for leave to amend Grounds One and Two of his petition for writ of habeas corpus ("Petition"). (Dkt. No. 64.) Petitioner explains that upon reviewing the Report, he "recognized that the traverse contained inadequate briefing with respect to ground one:

(Insufficient Evidence) and two: (*Brady* Violation)." (Motion at 2.) Petitioner seeks to cure the inadequate briefing by amending the Petition. (*Id.* at 2-3.)

A petition for writ of habeas corpus must "(1) specify all the grounds for relief available to the petitioner; (2) state the facts supporting each ground; (3) state the relief requested; (4) be printed, typewritten, or legibly handwritten; and (5) be signed under penalty of perjury by the petitioner or by a person authorized to sign it for the petitioner under 28 U.S.C. § 2242." Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts.

Petitioner's proposed amendments do not change the grounds for relief in Ground One (insufficient evidence of dissuading a witness) and Ground Two (*Brady* violation). (Petition at 19, 26.)[1]

Petitioner does not identify any new facts in his proposed amendments to Grounds One and Two. Petitioner cites the same footage and testimony. (*Compare* Petition at 19-25 & Amended Reply, Dkt. No. 45 at 7-13 *with* Dkt. No. 64 at 4-8.) The court reaches the same conclusion on Ground Two. (*Compare* Petition at 26-30 & Amended Reply, Dkt. No. 45 at 13-16 *with* Dkt. No. 64 at 8-11.) Accordingly, Petitioner's motion for leave to amend Grounds One and Two is DENIED WITHOUT PREJUDICE AS UNNECESSARY. *See Bonin v. Calderon*, 59 F.3d 815, 846 (9th Cir. 1995) (affirming denial of leave to amend habeas petition when proposed amendments were "duplicative of existing claims"). This ruling does not preclude Petitioner from raising any fact or argument in his proposed amendments, all of which have been considered in connection with Grounds One and Two.

B. Ground One: Dissuading a Witness

Petitioner argues that there was insufficient evidence to support his conviction for dissuading a witness, Mr. Bell. Petitioner bears the burden of

---

[1] Page citations are to page numbers assigned by CM/ECF in the header.

2

demonstrating that no rational trier of fact could have agreed with the jury, and that the state court's decision was objectively unreasonable. *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam).

The California Supreme Court summarily denied Ground One. (LD 11.) "[A] habeas court must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this [Supreme] Court." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

The crime of dissuading a witness requires that the prosecution prove four elements beyond a reasonable doubt: (1) Bell was a witness or victim; (2) Petitioner, with the specific intent to do so, prevented or dissuaded or attempted to prevent or dissuade Bell from attending or giving testimony at any trial, proceeding or inquiry authorized by law; (3) Petitioner acted knowingly and maliciously; and (4) the act of preventing, dissuading, or the attempt thereto, was accompanied by force or by an express or implied threat of force or violence upon the person or property of Bell. (Report at 18); *People v. Young*, 34 Cal. 4th 1149, 1211-12 (2005).

Petitioner states that, at page 19 of the Report, the magistrate judge appeared to misconstrue Bell's testimony about the assault as testimony about the dissuading charge. On page 19, the magistrate judge reviewed Bell's testimony at trial that he did not want to testify, felt pressured when he spoke to police and was afraid of being labeled a snitch. (Report at 19.)

Petitioner argues that the relevant evidence consists of Bell's conflicting testimony about the attacks at the Twin Towers jail and the courthouse holding

cell; Bell's preliminary hearing testimony; Officer Ortiz's testimony about these altercations; and video of the altercation in the courthouse holding cell.

A habeas court considers "'all of the evidence admitted by the trial court,' regardless whether that evidence was admitted erroneously." *McDaniel v. Brown,* 558 U.S. 120, 131 (2010) (citation omitted). The prosecution called Bell to testify at trial. Bell testified that there was an altercation with Petitioner at the Twin Towers jail on the day Bell testified at the preliminary hearing. (4RT 916-17.) Bell did not want to answer any more questions. (*Id.* at 917.) The morning of the preliminary hearing, Bell was put in the same jail cell with Petitioner and others. Bell and Petitioner got into an altercation, pushing and shoving each other. They stopped; no deputy broke it up. Petitioner had a bunch of papers, including statements by Bell and Bell's brother. (*Id.* at 931-35.) The next time Bell saw Petitioner, they were in the courthouse holding tank with other inmates. (*Id.* at 937.) They got into a fight. Petitioner said he had paperwork that Bell had written a statement. Bell was afraid because he did not want to be labeled as a snitch. (*Id.* at 938-39.) Bell testified at the preliminary hearing. Bell testified at trial that "if it was up to me, I would walk out that door, but I can't." (*Id.* at 940.)

The prosecutor questioned Bell about his prior testimony. Bell had testified at the preliminary hearing that Petitioner confronted him at the jail with paperwork and they got into a "fistfight altercation." (*Id.* at 942-43.) Petitioner said Bell snitched on him. (*Id.* at 942.) Petitioner had shown him paperwork with Bell's name and statements. Other inmates said they had seen the paperwork. (*Id.* at 945.) Bell identified the paperwork at the preliminary hearing. (*Id.* at 946-47.) Bell further testified that before the second fistfight, Petitioner showed the paperwork, "letting everyone see that I am a snitch." (*Id.* at 947.) Petitioner said he would never tell on Bell selling dope so he expected the same from Bell. (*Id.*)

Bell testified at the preliminary hearing that during the first altercation Petitioner took a swing at his face. (*Id.* at 948-49.) Bell read the paperwork after

4

the second altercation. (*Id.* at 949.) During the second altercation, Petitioner rushed him and Bell tried to defend himself. After what happened, Bell did not want to testify. (*Id.* at 950.) Bell confirmed at trial that was his testimony at the preliminary hearing. (*Id.*)

Bell would not confirm at trial that Petitioner had shown him documents about his statement at Twin Towers.[2] (*Id.* at 951-52.) The prosecutor played a video of the second altercation in the courthouse holding tank for the jury. (*Id.* at 954.) The prosecutor asked Bell whether he could see paper being handed amongst the inmates on the video. Bell responded that he couldn't say. (*Id.* at 956.) Bell agreed that he attacked Petitioner. (*Id.* at 964.) The prosecutor asked why Bell got up when Petitioner entered the cell. Bell responded: "Just simple fact that we already got into an altercation, though. I pretty much just finishing what we didn't get to finish" "in the Towers." (*Id.* at 958, 962.) The video showed Petitioner pressing Bell against the wall. (*Id.* at 958-59.) During a later portion of the video, it appeared that Bell and Petitioner were having a conversation but Bell testified he did not know what was said because it had been a long time. (*Id.* at 959-60.) Bell denied that Petitioner called him a snitch. (*Id.* at 962.) Bell testified that he did not want to be at trial and felt that he was being forced. (*Id.* at 964.)

On cross examination, Bell admitted he testified at the preliminary hearing that Petitioner had attacked him in the courthouse holding tank when it was the other way around. (*Id.* at 965.)

Officer Ortiz testified that Bell initially refused to come out of the tank to testify at the preliminary hearing. (*Id.* at 975.) Bell told Ortiz he had been placed in the same holding cell both at Twin Towers and at the courthouse. At Twin Towers, Petitioner showed him and other inmates paperwork with Bell's name and signature, and accused him of being a snitch. Petitioner attacked Bell and

---

[2] Bell testified at trial that Petitioner showed him his brother's statement. (*Id.* at 951.) Later, Bell denied seeing his brother's statement. (*Id.* at 963.)

5

deputies broke it up. (*Id.* at 976-77.) Ortiz later went to Twin Towers but there was no video. There was no report from lockup deputies about breaking up a fight between Petitioner and Bell. (*Id.* at 977-78, 1009-10.) Ortiz was able to get video of the courthouse holding tank altercation. (*Id.* at 978.)

Petitioner testified at trial that he had received discovery that had names, including Bell's name, about two weeks before the preliminary hearing. He "started asking people in the tank if they knew these people" and "said these people downtown, they started lying on me." Petitioner didn't get to Bell's name because they got chained up to be taken to court. (*Id.* at 1233-34, 1238-39.) Later, at the courthouse holding tank, Petitioner, who was representing himself at the preliminary hearing, handed a paper to "Steve" and talked about how to question witnesses. While waiting for the guy's input, Bell walked up and hit him (although Petitioner did know it was Bell at the time). (*Id.* at 1234-35, 1256.)

On cross examination, Petitioner acknowledged having the six pack on which Bell circled his photo at Twin Towers. (*Id.* at 1255.) Petitioner acknowledged asking around in jail who Bell was. (*Id.* at 1250.) Petitioner had testified at the preliminary hearing that he had seen Bell on the street before being taken into custody but didn't know his name. (*Id.* at 1251-52.) Petitioner testified at the preliminary hearing that Bell was placed with him at jail and at the courthouse holding tank. (*Id.* at 1259.) After the altercation in the courthouse holding tank, deputies split them up and Bell identified himself to the deputies. The deputies put the two of them in adjacent tanks. They could not get to each other but could talk. Petitioner told Bell that he would never have lied on Bell "so I would appreciate it if you wouldn't lie to me." Bell denied lying on Petitioner, who responded that "I have paperwork right here showing where you lied on me." (*Id.* at 1260-61.)

Petitioner argues that a jury could not reasonably find that he attacked Bell at Twin Towers because Ortiz testified that Bell told him deputies broke up the

6

fight yet there was no report of such an incident.  Petitioner further argues the video shows that Petitioner did not look in Bell's direction when he entered the courthouse holding tank, and that Bell attacked him.  Bell admitted at trial that he testified at the preliminary hearing it was the other way around.  Petitioner contends that Bell's ability to ambush Petitioner in the courthouse holding tank is credible evidence that Bell had none of the off-camera encounters Bell described.

"[I]t is the responsibility of the jury — not the court — to decide what conclusions should be drawn from evidence admitted at trial." *Cavazos,* 565 U.S. at 2.  "[A] reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Id.* at 7 (citation omitted).

Petitioner does not satisfy his burden of showing that no rational trier of fact could have agreed with the jury, and that the state court's decision was objectively unreasonable.  There was sufficient evidence to support each element of dissuading a witness beyond a reasonable doubt.  To be sure, the jury heard conflicting evidence.  Although Ortiz testified that Bell told him deputies broke up the fight at Twin Towers, Bell testified that he and Petitioner pushed and shoved each other at Twin Towers and deputies did not break up a fight.  The absence of a report of an incident at Twin Towers would be consistent with Bell's trial testimony.  As to the second incident in the courthouse holding tank, Bell admitted at trial that he attacked Petitioner to finish what began at Twin Towers.  In closing, the prosecutor argued the evidence showed that when Petitioner came into the courthouse holding tank, Bell realized that Petitioner could show other inmates that he snitched and realized what happened to inmates who were snitches.  Bell went after Petitioner to send a message to stay away from him.  (5RT 1519.)  The inconsistencies in Bell's testimony were explained by his stated reluctance to testify and be labeled a snitch.  Given Petitioner's argument that the

7

video shows he did not even look in Bell's direction when he entered the courthouse holding tank (Motion at 6), the fact that Bell was able to ambush him does not foreclose the conclusion that Petitioner committed the crime of dissuading a witness. The jury heard defense counsel make the arguments that there was no report of an incident at the Twin Towers jail and that Bell admitted lying about who attacked whom at the courthouse holding tank. (*Id.* at 1526.)

The state court's decision was not contrary to, or an unreasonable application of, clearly established federal law and was not an unreasonable determination of the facts.

### C. Ground Two: *Brady* Violation Re Video

The California Supreme Court summarily denied Ground Two. (LD 11.) Petitioner did not request an evidentiary hearing in state court. (LD 8; LD 10.)

Ortiz testified that there were at least five video cameras in the area of the assault on Bell on July 19, 2010. (4RT 1008-09.) In closing, defense counsel argued that the prosecution failed to meet its burden of proof beyond a reasonable doubt and that, at a minimum, the prosecution should have presented video of the crime scene. (5RT 1532.) In rebuttal, the prosecution conceded that it presented "the evidence that we have from July 19, 2010." (*Id.* at 1537.)

Petitioner argues that the prosecution violated *Brady* by suppressing the video, which would have been favorable to him. The record is not clear as to whether the video was suppressed. At sidebar, the prosecutor informed the court that Petitioner "is on some of those cameras and on some of those videotapes." (4RT 1019.) The Report describes defense counsel's requests to obtain the video. (Report at 24-25.) Specifically, defense counsel stated he would want to see the video from camera no. 2 to see if Petitioner was caught on tape. (4RT 1012.) The next day at trial, the prosecutor put on the record that defense counsel had asked "whether any video existed that showed or portrayed the defendant on it." The prosecutor stated that his "investigating officer is trying to

8

get that video" and "the People are doing their best to get it for whatever value it is worth." (4RT 1211.) The record does not disclose anything further as to whether the video was given to the defense.

Assuming the video was not turned over, Petitioner bears the burden of demonstrating a """ reasonable likelihood"""" it could have """ affected the judgment of the jury."""" *Wearry v. Cain*, 136 S. Ct. 1002, 1006 (2016) (citation omitted). He "need not show that he 'more likely than not' would have been acquitted had the new evidence been admitted." *Id.* (citation omitted). "He must show only that the new evidence is sufficient to 'undermine confidence' in the verdict." *Id.* (citation omitted).

Petitioner has not satisfied his burden for the reasons identified in the Report. The jury was aware that there were at least five cameras in the vicinity. The jury heard both defense counsel's argument that there was no video evidence to corroborate any assault, and the prosecution's concession that it presented to the jury what evidence it had. Production of video that did not show an assault would at best be cumulative. *Morris v. Ylst*, 447 F.3d 735, 741 (9th Cir. 2006) (failure to disclose cumulative evidence does not establish *Brady* violation). At worst, production of video could show that the cameras were not in a position to view the specific assault scene and therefore undermine the defense inference that the absence of video meant that the assault did not occur.

D.  Ground Three:  *Brady* Violation Re Murder Book

Petitioner argues that the prosecution's failure to produce the murder book of an uncharged murder of "X-ray" violated *Brady*. The California Supreme Court denied this ground with a citation to *In re Clark*, 5 Cal. 4th 750, 767-69 (1993), indicating procedural default. (LD 19.) Petitioner did not request an evidentiary hearing in state court. (LD 18.)

The court adopts the Report's findings and recommendations on this ground. The court further notes that, in closing argument, the prosecution did not

9

mention or rely on Ortiz's testimony that Sanders pointed out Petitioner at the police station.  Instead, the prosecutor addressed the question:  "Why didn't she identify the defendant right off that bat?"  (5RT 1511.)  The prosecutor argued that Sanders' testimony was credible because, among other things, her testimony had been consistent all along and she did not have anything to gain.  (*Id.* at 1512.)

IT THEREFORE IS ORDERED that judgment be entered denying the Petition on the merits with prejudice.

DATED: June 16, 2017

/s/ Valerie Baker Fairbank
VALERIE BAKER FAIRBANK
United States District Judge